## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### (Baltimore Division)

| | | |
|---|---|---|
| In re: | * | |
| **APRIL MICHELLE ALEXANDER-GILES** | * | **Case No. 21-16774-NVA** |
| | * | **(Chapter 7)** |
| Debtor. | | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| **SNOWDEN INVESTORS LLC** | * | |
| **7200 Wisconsin Avenue, Suite 700** | | |
| **Bethesda, MD 20814** | * | |
| **Plaintiff** | * | |
| **v.** | * | **Adversary No:_____** |
| **APRIL MICHELLE ALEXANDER-GILES** | * | |
| **11358 Barley Field Way** | * | |
| **Marriottsville, MD 21104** | | |
| | * | |
| **Defendant** | | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT OBJECTING TO DISCHARGE OF DEBTOR

Snowden Investors LLC (the "Plaintiff"), by and through its undersigned counsel, pursuant to Rules 4004 and 7001(4) of the Federal Rules of Bankruptcy Procedure[1] and Section 727 of Title 11 of the United State Code[2], hereby files this *Complaint Objecting to Discharge of Debtor*, and in support thereof states as follows:

---

[1] The "Bankruptcy Rules."

[2] The "Bankruptcy Code."

## Consent to Entry of Final Orders and Judgments

1.      Pursuant to Bankruptcy Rule 7008 and Local Bankruptcy Rule 7012-1, the Plaintiff hereby consents to the entry of final orders and judgments by the Judges of the United States Bankruptcy Court for the District of Maryland.

## Jurisdiction

2.      This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334 and Local Rule 402 of the United States District Court for the District of Maryland.  Venue of this proceeding is proper in this judicial district pursuant to 28 U.S.C. § 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(J).

## Facts

3.      Plaintiff is a creditor of Defendant April Michelle Alexander-Giles (the "Debtor"), with Plaintiff having filed a proof of claim [Claim 14] asserting a liability of $1,037,559.50 owed by the Debtor based on her personal guaranty of a commercial lease.

4.      On October 27, 2021 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code, commencing Case No. 21-16774-NVA.

5.      The Debtor's case was preceded by the Chapter 7 filing of the Debtor's spouse, Dawn Cricket Alexander ("Ms. Alexander"), on June 11, 2021, Case No. 21-13896-DER.

6.      The Debtor's case was also preceded by the Chapter 11 filing of the Debtor's business, Algits Incorporated ("Algits"), on June 11, 2021, Case No. 21-13888-DER.

7.      Upon information and belief, the Debtor was the majority owner of Algits until her ownership interest was purchased by the corporation in January 2020, leaving Ms. Alexander as the sole owner of Algits since that time.

8.      Upon information and belief, both the Debtor and her spouse managed the operations and financial affairs of the Algits corporation from 2017 until it ceased operations in September 2021, with both the Debtor and her spouse having received regular income from the business.

9.      Despite the initial creditors meeting on December 6, 2021 lasting for approximately forty-five minutes, the Debtor's testimony was so evasive and unresponsive that the Chapter 7 Trustee requested a continued meeting be held in person at the U.S. Trustee's office.

10.     Due to Covid protocols, the continued meeting was ultimately conducted remotely on February 4, 2022 and, consequently, the Court extended the deadline to file an objection to discharge until April 5, 2022 [ECF 44].

11.     Just minutes prior to the continued meeting, the Debtor filed amended Schedules and Statement of Financial Affairs [ECF 22].

12.     As Plaintiff was finalizing the preparation of this Complaint for filing, the Trustee has moved to extend the deadline for discharge objections another sixty days, noting the failure of the Debtor to fully comply with the Trustee's demands for information [ECF 47].

<u>Concealed Income in 2019</u>

13.     In her response to Item 4 on her Statement of Financial Affairs [ECF 1 and 22], the Debtor failed to disclose her business income from Algits in 2019; though she did disclose income for the subsequent two years when presumably the income had significantly decreased due to the impact of the Covid pandemic on the business and/or as a result of the Debtor's relinquishment of her ownership interest.

14.     With the unknown income she received in 2019 from Algits or other business sources, the Debtor is believed to have made significant payments outside of ordinary course, including:

      a.   A down payment of at least $60,000 when purchasing her 11358 Barley Field Way property in June 2019; and

      b.   Payments totaling approximately $100,000 to Robert Gramlich for construction/renovation work on the 11358 Barley Field Way property in 2019.

15.     Thus, it appears the Debtor has concealed or failed to keep information as to her unknown income and large expenditures.

16.     The Debtor's responses to questions on this subject at the creditors meeting were vague and evasive.

17.     Furthermore, a subpoena issued in the Algits case seeking its bank records, including from 2019 – which would have presumably would have disclosed any extraordinary or inappropriate transfers to or for the benefit of the Debtor – was met with a motion for temporary restraining order to prevent the bank's disclosure.

18.     As Algits had already ceased operating and presumably had nothing to hide, the apparent purpose of the restraining order was to prevent the disclosure of questionable financial transactions by the Debtor and her spouse.

<u>Unexplained Gambling Losses and/or Sources of Income</u>

19.     On her Amended Statement of Financial Affairs [ECF 22], the Debtor stated that she had an "unknown" amount of gambling losses in the year prior to the Petition Date.

20.     That same question was previously answered with $60,000 being stated as the amount on her original Statement of Financial Affairs [ECF 1].

21.     Presumably, the "unknown" in the amended filing is greater than the original amount sworn to by the Debtor.

22.     Given that the Debtor's household budget is in the negative before accounting for $60,000+ of gambling losses in one year, the source and disposition of those funds has not been properly disclosed.

23.     The Debtor's responses to questions on this subject at the meeting of creditors were vague and evasive.

<u>Concealed Tax Refunds</u>

24.      At her continued creditors meeting on February 4, 2022, the Debtor incorrectly stated that her 2018 and 2020 tax returns had already been filed.

25.     And, the Debtor omitted any potential tax refunds being due to her on her Schedule A/B [ECF 1 and 22].

26.     Upon information and belief, the Debtor anticipated receiving significant refunds for 2018 and 2020 tax years and misstated the filing status so as to prevent the Chapter 7 Trustee from attempting to recover the refunds for the benefit of creditors.

<u>Inconsistencies and Misrepresentations as to Real Estate</u>

27.     The Debtor stated her residence to be at 11358 Barley Field Way property as of the Petition Date in October 2021 [ECF 1], and that she has not resided at the 5108 Brady Court property since 2019 [ECF 22].

28.     However, both Ms. Alexander and Algits listed the Brady Court address for the Debtor on their bankruptcy schedules filed just four months earlier.

29.     Upon information and belief, the Brady Court property is now vacant.

30.     Notably, the inconsistent statements by the Debtor and her spouse as to their residences result in them both claiming homestead exemptions on different properties.

31.     Furthermore, between the Barley Field Way property and the Bready Court property, the Debtor's valuations were more than $340,000 less than her spouse's valuations for the properties just four months prior, and that is in the midst of an extraordinarily heightened market.

<u>Concealment or Failure to Explain Loss of Assets</u>

32.     At the meeting of creditors, the Debtor was unable to provide details for the $400,000 she scheduled as being owed to her from Algits.

33.     Algits – of which the Debtor was the majority owner from at least 2017 to 2019 – operated under the tradename NinjaBe.

34.     Recorded among the land records for Howard County at Book 18844, page 66 is a Mortgage in favor of NinjaBe Holdings, LLC, serving as a lien against the Debtor's Barley Field Way property.

35.     The Mortgage is in the stated amount of $250,000.

36.     NinjaBe Holdings, LLC is registered with the Maryland Department of Assessment & Taxation as a foreign entity originally formed in Wyoming, with Kline Law Group LLC having filed the registration and Robert Kline, III identified as the company's registered agent in Maryland.

37.     Mr. Kline and Kline Law Group represent the Debtor's spouse in her Chapter 7 proceeding.

38.     Mr. Kline and Kline Law Group also represent Algits in its Chapter 11 proceeding.

39.     At the creditors meeting, the Debtor testified that she did not receive the $250,000 that the Mortgage states was loaned to her by NinjaBe Holdings, LLC and, furthermore, that the Mortgage was created for the purpose of protecting her home.

40.     Despite the apparent connection between the Debtor and NinjaBe Holdings, the Debtor was unable to explain the details of this entity and why it purports to have loaned the Debtor $250,000 that the Debtor says she never received.

41.     In addition to NinjaBe Holdings, LLC, there is also (i) NinjaBe Commercial Ventures LLC and (ii) NinjaBe Construction Partners LLC, both being registered Maryland entities for which Articles of Organization were filed by Mr. Kline, with him also being identified as resident agent.

42.     The Debtor has denied any relationship to these entities despite the ostensive connection.

<u>Transfers/Concealments/Failures to Explain in Connection with Insiders' Cases</u>

43.     Both Ms. Alexander and Algits are insiders, as that term is defined under Section 101 of the Bankrupcy Code, either by way of their connection to the Debtor failling within one of the enumerated categories, or otherwise based on the facts and circumstances of their relationship with the Debtor.

44.     While the Debtor did attend the creditors meeting in the Algits case, Ms. Alexander was the representative who testified as representative for Algits.

45.     Unfortunately, the testimony of Ms. Alexander at the creditors meetings in both her personal Chapter 7 proceeding and the Algits Chapter 11 proceeding was littered with vague and evasive responses.

46.    Just months prior to its Chapter 11 filing, Algits obtained an Emergency Relief Fund Loan in the amount of $200,000 from the Maryland Small Business Development Financing Authority.

47.    The terms of that emergency loan required that $180,000 of the loan proceeds "shall" be used to pay delinquent rent to Algits' landlord.

48.    Despite having more than three months to do as required under the emergency loan, Algits paid only $26,630.25 towards delinquent rent.

49.    After the commencement of the Chapter 11 proceeding, Algits failed to comply with the statutory obligation to pay rent that came due after the Petition Date, despite the record in the Algits clearly establishing that there was sufficient cash on hand to make the rent payments.

50.    Having not made any post-petition payments to its landlord, Algits went on to propose, by way of a consent order, *post hoc* approval of an unauthorized transfer of all cash funds Algits had remaining (including those directly traceable to the emergency loan that was required to be paid toward delinquent rent) and the use of those funds as a setoff against debt owed to Eagle Bank, which was conveniently cross-collateralized by the Debtor's real estate; thereby leaving no funds available for the Algits unsecured creditors – despite Eagle Bank clearly having not been secured by the funds.

51.    Thus, after intentionally not complying with the express conditions upon which they obtained any emergency government loan, then failing to comply with mandatory requirements under the Bankruptcy Code, Algits transferred funds without the requisite court authorization for the seeming purpose of satisfying secured debt against the Debtor's personal assets, rather than paying the creditor for whom such funds were designated.

52.     The wrongful purpose of that conduct in the Algits case, by and/or with the participation of the Debtor, is magnified by not only the Debtor's statements in her filing and testimony, but also the other circumstances in the Algits case.

53.     First, there was a motion for a sale of the Algits assets to a buyer who presented a fraudulent check for closing.

54.     That was followed by an auction sale of Algits' assets without any authorization or notice, forcing the Subchapter V Trustee to pull together *post hac* approval and completion of the sale.

55.     Furthermore, there are questionable transfers by Algits that appear to be to or for the benefit of the Debtor, after the business ceased operations in September 2021.

56.     Despite Algits closing its doors and selling its assets in the middle of September, the business somehow exceeded its cash collateral budget for the month by more than $30,000, including payments that appear to be to or for the benefit of the Debtor by way of payroll and payment of debts for which the Debtor also has liability.

57.     Based on the foregoing, the Plaintiff avers that there may be other intentional conduct hindering her creditors or bankruptcy estate, and material errors and omissions in the Debtor's filed Schedules and Statement of Financial Affairs, as well as within her testimony at her creditors meeting, that will be discovered if the Debtor is forced to fully and accurately disclose her assets, financial condition, and business transactions.

## Objection to Discharge

58.     Section 727(c)(1) of the Bankruptcy Code provides that "a creditor … may object to the granting of a discharge under subsection (a) of this section."

59.     Among the enumerated grounds set forth in Section 727(a) for denying a debtor's

discharge are:

> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—
> > (A) property of the debtor, within one year before the date of the filing of the petition; or
> > (B) property of the estate, after the date of the filing of the petition;
>
> (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;
>
> (4) the debtor knowingly and fraudulently, in or in connection with the case—
> > (A) made a false oath or account;
> > (B) presented or used a false claim;
> > (C) gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or
> > (D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs;
>
> (5 ) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities;
> …
> (7) the debtor has committed any act specified in paragraph (2), (3), (4), (5), or (6) of this subsection, on or within one year before the date of the filing of the petition, or during the case, in connection with another case, under this title or under the Bankruptcy Act, concerning an insider;

60.     Based on the facts averred, the Plaintiff submits that each of the above-referenced

grounds for denial of discharge are applicable to the Debtor's proceeding.

61.     Accordingly, the Plaintiff requests denial of the Debtor's prospective discharge.

WHEREFORE, Plaintiff, Snowden Investors LLC, respectfully requests that this Court enter an order denying the discharge of the Defendant, April Michelle Alexander-Giles, and granting such other and further relief as is just and equitable.

Dated:  April 5, 2022

/s/ Joseph M. Selba
Joseph M. Selba, Bar No. 29181
Tydings & Rosenberg, LLP
1 E. Pratt Street, Suite 901
Baltimore, MD 21202
(410) 752-9753
jselba@tydingslaw.com
*Attorneys for Plaintiff*