# IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | |
|---|---|
| In Re:<br>**APRIL M. ALEXANDER-GILES**,<br>    Debtor. | Case No.: 21-16774-NVA<br><br>Chapter 7 |
| **SNOWDEN INVESTORS, LLC**,<br>    Plaintiff<br>v.<br>**APRIL M. ALEXANDER-GILES,**<br>    Defendant | Adv. Proc.: 22-00071-NVA |
| **GERARD R. VETTER,**[1]<br>**Acting United States Trustee for Region Four,**<br>    Plaintiff,<br>v.<br>**APRIL M. ALEXANDER-GILES**,<br>    Defendant. | Adv. Pro.: 22-00148-NVA |

**MEMORANDUM IN SUPPORT OF
THE UNITED STATES TRUSTEE'S
MOTION FOR SUMMARY JUDGMENT ON COUNT III**

Plaintiff, Gerard R. Vetter, Acting United States Trustee for Region Four, which includes the District of Maryland, pursuant to Rule 56 of the Federal Rules of Civil

---

[1] On July 1, 2023, John P. Fitzgerald, III, retired and Gerard R. Vetter replaced him as the acting United States Trustee for Region 4. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, made applicable to this action by Rule 7025 of the Federal Rules of Bankruptcy Procedure, Mr. Vetter is automatically substituted for Mr. Fitzgerald as a party.

Procedure, made applicable to this action by Rule 7056 of the Federal Rules of Bankruptcy Procedure, and Rule 9013 of the Local Rules of this Court, files this memorandum in support of the United States Trustee's Motion for Summary Judgment on Count III.

## INTRODUCTION

Less than three years before she filed bankruptcy, Debtor, April Alexander-Giles, received a cash payment of $450,000. By the time she filed her bankruptcy case, none of it was left. When asked about this, Ms. Alexander-Giles provided no explanation whatsoever for what happened to this money. $450,000 vanished into thin air.

Section 727(a)(5) of the Bankruptcy Code prohibits the granting of a Chapter 7 discharge where a "debtor has failed to explain satisfactorily ... any loss of assets or deficiency of assets to meet the debtor's liabilities." 11 U.S.C. § 727(a)(5). Ms. Alexander-Giles has failed to explain this loss at all, let alone to explain it satisfactorily.

For the reasons stated above, and described more fully below, the Court should grant the United States Trustee's Motion for Summary Judgment on Count III and deny Ms. Alexander-Giles's chapter 7 discharge.

## UNDISPUTED FACTS

### A. Ms. Alexander-Giles Receives and Dissipates $450,000.

Until December 2019, Ms. Alexander-Giles owned at least 50% of a corporation known as Algits, Inc. ("Algits"). (*See* Deposition of April Alexander-Giles, cited excerpts

attached as Exhibit 1, at 30-31, 37-39.)   The remainder of Algits was owned by Ms. Alexander-Giles's spouse, Dawn Alexander.  (*See* Ex. 1 at 8, 37-39.)   In 2019, Ms. Alexander-Giles sold her stock back to Algits, leaving Dawn Alexander as Algits's sole owner.  (*See* Ex. 1 at 39, 41-43.)   Algits filed a voluntary Chapter 11, Subchapter V petition on June 11, 2021. (*See In re Algits*, *Inc. d/b/a NinjaBe*, Case 21-13888 (Bankr. D. Md.).)

Algits, which operated under the trade name "NinjaBe," operated a "Ninja Warrior" style gym and play area in Columbia Maryland.  (*See* Motion to Sell Substantially All Assets from *In re Algits*, *Inc. d/b/a NinjaBe*, Case 21-13888 (Bankr. D. Md.), doc. 35, attached as Exhibit 2, at caption and ¶ 2.)   In connection with Ms. Alexander-Giles's and Dawn Alexander's contemplation of franchising the "NinjaBe" gyms, they caused an umbrella entity known as "NinjaBe Holdings, LLC" ("NinjaBe Holdings") to be created. (*See* Deposition of Robert Kline, cited portions attached as Exhibit 3, at 47-49.)[2]

NinjaBe Holdings was formed in April, 2018, and Ms. Alexander-Giles owns, and always owned, either 50% or 100%.  (*See* Art. of Org. for NinjaBe Holdings, LLC, attached as Exhibit 4; Ex. 3 at 49, 58; *and compare* Operating Agreement of NinjaBe Holdings, LLC, attached as Exhibit 5, at 2-3; *with* Tr. of Feb. 4, 2022 meeting of creditors, cited excerpts attached as Exhibit 6, at 16-17, 29.)   NinjaBe Holdings had a bank account

---

[2] Although she initially testified at her meeting of creditors that NinjaBe Holdings was created as some sort of protection strategy for her home, by the time of her deposition, Ms. Alexander-Giles seems to concede that its actual purpose was related to the franchising of the NinjaBe businesses.  (*Compare* Ex. 6 at 6-8, 11-12, *with* Ex. 1 at 51-53, 55-57.)   In any event, if there is a dispute of fact over the reason NinjaBe Holdings was created, it is an immaterial fact.   There is no dispute that NinjaBe Holdings was, in fact, created and exists.

at Revere Bank. (*See* Ex. 1 at 135, 167-68.)[3] Ms. Alexander-Giles was an authorized user of that account. (Ex. 1 at 169.)

On July 5, 2018, Algits's then-landlord, TSC/JMJ Snowden River South, LLC ("Snowden River South"), issued a check to Algits in the amount of $498,762.39. (*See* Check from Snowden River South, attached as Exhibit 7; Ex. 1 at 135-38.)[4] That same day, Ms. Alexander-Giles deposited the check into NinjaBe Holdings's bank account. (*See* Ex. 1 at 135-36; Exhibit 7.)

On November 5, 2018, Ms. Alexander-Giles withdrew $450,000 from the NinjaBe Holdings account by causing Revere Bank to issue her a cashier's check in her own name. (*See* Ex. 1 at 138-45; Cashiers Check and withdrawal form, attached as Exhibit 8.) According to Ms. Alexander-Giles, this constituted a partial repayment of a loan she made to Algits. (*See* Ex. 1 at 138-45.)

Ms. Alexander-Giles deposited the $450,000 into a business bank account she opened under the name NinjaBe Franchise Ventures, LLC. ("NinjaBe Franchise Ventures"). (*See* Ex. 1 at 143-48; November 2018 Bank Statement for NinjaBe Franchise Ventures attached as Exhibit 9.) Although the money was deposited in the NinjaBe

---

[3] Revere Bank was acquired by Sandy Spring Bank in April 2020. https://www.sandyspringbank.com/news/sandy-spring-bank-completes-conversion-all-revere-bank-systems-and-branding#:~:text=Sandy%20Spring%20Bank.-,Sandy%20Spring%20Bancorp%2C%20Inc.,all%20of%20our%20new%20clients.

[4] Snowden River South was in chapter 11 bankruptcy at the time the check was issued. (*See* Case 17-24150 (D. Md.).) According to Algits's proof of claim, Snowden River South owed Algits $406,277.60 in "unpaid tenant improvement costs." (*See* Case 17-24150, claim 10-1.) Pursuant to Snowden River South's Plan of Reorganization, general unsecured creditors such as Algits were paid 100% of their allowed claims. (*See* Case 17-24150, Doc. 95 at 10.)

Franchise Ventures account, it was Ms. Alexander-Giles's and Dawn Alexander's personal money. (*See* Ex. 1 at 143-45.)

By January 7, 2020, none of the $450,000 remained in the NinjaBe Franchise Ventures account. On January 7, 2020, the NinjaBe Franchise Ventures account was overdrawn by $367.38. (*See* January 2020 Bank Statement for NinjaBe Franchise Ventures attached as Exhibit 10.) On October 27, 2021, Ms. Alexander-Giles filed a Chapter 7 petition. (*See* Case 21-16774, Doc. 1.) She did not have any of the $450,000 at that time. Rather, according to her Schedules, as of October 27, 2021, Ms. Alexander-Giles had only $2,563.86 in cash assets. (*See* Amended Schedules, Case 21-16774, Doc. 15, attached as Exhibit 11, at 15.)[5] Ms. Alexander-Giles's Statement of Financial Affairs indicates that she made no transfers of funds from October 27, 2019, through October 27, 2021. (*See* Ex. 11 at 5.)

Dawn Alexander also claims not to have any of the $450,000. She filed a Chapter 7 case on June 11, 2021. (*See* Case 21-13896, Doc. 1.) According to her Schedules, Ms. Alexander had only $69.21 of cash assets when she filed and she also stated that she had not transferred away any cash assets since June 11, 2019. (*See* Case 21-13896, Doc. 33, attached as Exhibit 12, at 6.)[6]

---

[5] Ms. Alexander-Giles also scheduled $256,092.58 in a TSP account. However, because TSPs are funded through salary withdrawals, none of that (or at least no significant portion of that) could have originated with the $450,000 taken from the NinjaBe Holdings account.

[6] Dawn Alexander also scheduled money in various IRAs and 401(k)s. (*See* Ex. 12 at 7.) However, there is no indication that any of those funds originated with the $450,000.

**B.     Ms. Alexander- Giles Fails or Refuses to Explain What Happened to the $450,000, Resulting in the Filing of this Adversary Proceeding.**

As noted above, Ms. Alexander-Giles commenced her Chapter 7 case on October 27, 2021. In her initial Schedules and Statement of Financial Affairs, Ms. Alexander-Giles did not disclose her ownership interest in NinjaBe Holdings or the December 2019 transfer of her interest in Algits. (*See* Original Schedules and Statement of Financial Affairs, attached hereto as Exhibit 13, at 14, 43.)[7]

Craig Leavers was appointed Chapter 7 Trustee in Ms. Alexander-Giles's case. (*See* Case 21-16774 at doc. 6.) He commenced the first meeting of creditors via teleconference on December 6, 2021, and after obtaining some testimony, adjourned and continued the meeting to an in-person meeting on February 4, 2022. (*See* Affidavit of Craig Leavers, attached hereto as Exhibit 14, at ¶ 2.) Also, on December 6, 2021, immediately prior to the commencement of her first meeting of creditors, Ms. Alexander-Giles filed amended Schedules and an amended Statement of Financial Affairs. (*See* Ex. 11.) In these amended documents, Ms. Alexander-Giles still failed to disclose her interest in NinjaBe Holdings, but she did disclose the transfer of her interest in Algits, thus disclosing, for the first time, that she had at one time had an ownership interest in Algits. (*See* Ex. 11 at 5, question 18.)

Following the December 6, 2021, meeting of creditors, as part of his investigation into potential assets, Mr. Leavers did two things of relevance here. First, he reviewed the

---

[7] Ms. Alexander-Giles did disclose that Algits was a co-debtor on certain of her debts. (*See* Ex. 13 at 13.)

land records and discovered that, although not disclosed in her Schedules, NinjaBe Holdings had recorded a lien on Ms. Alexander-Giles's home. (*See* Ex. 14 at ¶ 3.) This was the first time Mr. Leavers had ever heard of NinjaBe Holdings. (*See* Ex. 14 at ¶ 3.) Second, Mr. Leavers made inquiries of the Subchapter V Trustee in Algits's case and learned that on July 12, 2019, NinjaBe Holdings had made a $7,000 wire transfer to Algits. (*See* Ex. 14 at ¶ 4.)

At the continued meeting of creditors, Mr. Leavers, as well as other creditors, inquired about NinjaBe Holdings's mortgage and learned, for the first time, that Ms. Alexander-Giles had an interest in NinjaBe Holdings. (*See* Ex. 14 at ¶¶ 5-7; Ex. 6 at 16-17, 29.) Mr. Leavers also asked Ms. Alexander-Giles what bank maintained NinjaBe Holdings's bank account, but Ms. Alexander-Giles testified she did not know. (Ex. 6 at 13-14, 15-16.)

Through continuing investigation and discussions with Algits's Subchapter V Trustee, Mr. Leavers learned that the NinjaBe Holdings bank account was at Revere Bank, which had now merged with Sandy Spring Bank. (*See* Ex. 14 at ¶ 8.) Mr. Leavers then obtained an order permitting him to take a Rule 2004 examination of Sandy Spring Bank through which he obtained NinjaBe Holdings's bank statements and records. (*See* Ex. 14 at ¶ 9.) The order allowing this examination was entered on April 25, 2022. (*See* Case 21-16774, Doc. 50.)

On May 5, 2022, Sandy Spring Bank produced bank statements to Mr. Leavers, including the Revere Bank statements of the NinjaBe Holdings account, the $498,762.39

check and deposit into that account, and the $450,000 cashier's check to Ms. Alexander-Giles. (*See* Ex. 14 at ¶ 10.) This constitutes the first time Mr. Leavers became aware of the $450,000 payment Ms. Alexander-Giles received in November 2018. (*See* Ex. 14 at ¶ 11.) Upon learning of such a substantial loss of assets, Mr. Leavers requested Ms. Alexander-Giles explain what happened to the $450,000. (*See* Ex. 10 at ¶ 12.) He received no response. (*See* Ex. 14 at ¶ 14.)

As a result, *inter alia*, of Ms. Alexander-Giles's failure to explain the loss of such a substantial asset, the United States Trustee initiated the above-captioned adversary proceeding. In his Complaint, the United States Trustee alleged that Ms. Alexander-Giles withdrew the $450,000, was questioned about its disposition, and failed to respond. (*See* Compl, Adv. Pro. 22-148, Doc. 1, at ¶¶ 36-41, 54-55.) In her Answer, Ms. Alexander-Giles admits she "caused a check to be issued to her in the amount of four hundred fifty thousand dollars ($450,000.00) for partial repayment of a loan." (*See* Answer, Adv, Pro. 22-148, Doc. 10, at ¶ 39; *See also* ¶¶ 54-55.) Ms. Alexander-Giles denied, however, that she failed to respond to Mr. Leavers's inquiry about the $450,000. (*See* Answer, Adv. Pro. 22-148, Doc. 10, at ¶ 41.) What Ms. Alexander-Giles's Answer does not provide is any explanation as to what happened to the $450,000.

In following up on Ms. Alexander-Giles's Answer, and in an attempt to once again obtain an explanation for the disposition of the $450,000, the United States Trustee propounded an interrogatory on Ms. Alexander-Giles, noting that she denied that she failed to answer Mr. Leavers's inquiry about the $450,000 and, thus, asked for the answer she

contends "that she gave [Mr. Leavers] as to the disposition of the check." (*See* Alexander-Giles Response to Interrogatories, attached as Exhibit 15, at Response 20.)  In response, Ms. Alexander-Giles referred the United States Trustee to the transcripts of her meetings of creditors. (*See* Ex. 15 at Response 20.)[8]  She then stated that she does not believe she was ever asked "this specific question." (*See* Ex. 15 at Response 20.)  What Ms. Alexander-Giles did not do in her response was provide any explanation for the disposition of the $450,000.

During her deposition, counsel for the United States Trustee and for Snowden Investors inquired about the disposition of the $450,000 and were able discover what happened to some, but not all, of the $450,000.  It appears that Ms. Alexander-Giles used $102,000 of it as a down payment on a parcel of real property. (*See* Ex. 1 at 149-53.)  Another $29,000 apparently went back to Algits, although for what purpose Ms. Alexander-Giles could not explain. (*See* Ex. 1 at 153-54.)  However, as of this filing, Ms. Alexander-Giles has never provided any explanation as to what happened to the remaining $319,000 not described above.[9]

---

[8] As discussed above, Mr. Leavers did not learn of the $450,000 until Sandy Spring Bank produced records on May 5, 2022. (*See* Ex. 14 at ¶¶ 10-11.)  Thus, the referral to the transcripts of meetings held in December 2021 and February 2022 was a non-responsive answer that does not appear to have been provided in good faith.

[9] At her deposition, Ms. Alexander-Giles was asked about some other transfers out of the NinjaBe Franchise Ventures account, but she was unable to recall or explain those transfers. (*See* Ex. 1 at 154-56.)

**ARGUMENT**

A. **Standards for Granting Summary Judgment.**

Summary judgment is appropriate when "the movant shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Fed. R. Bankr. P. 7056. When these elements exist, the granting of summary judgment is mandatory. *Id.*; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the Supreme Court explained, summary judgment "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp.*, 477 U.S. at 327.

A party opposing a properly supported motion for summary judgment cannot successfully do so by simply asserting, without support, that a dispute of material fact exists. Rather, the party must, by admissible evidence, demonstrate that a genuine dispute of material fact exists. As the Supreme Court explained: "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis omitted) "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (emphasis omitted). Thus, where the evidence of a fact's

existence is indisputable, a party's mere denial is insufficient to defeat summary judgment. *Id; Abney v. Coe*, 493 F.3d 412, 420 (4th Cir. 2007).

### B.      Standards for Denial of Discharge Under Section 727(a)(5).

Section 727(a)(5) of the Bankruptcy Code provides that a Chapter 7 discharge should not be granted if "the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities." 11 U.S.C. § 727(a)(5). This statute "gives a court broad power to decline to grant a discharge in bankruptcy where the debtor does not adequately explain a shortage, loss, or disappearance of assets." *Powers v. Ottoson–King (In re Ottoson–King)*, 3 F. App'x 147, 151 (4th Cir. 2001) (quoting *In re Martin*, 698 F.2d 883, 886 (7th Cir.1983)). "In a proceeding involving Section 727(a)(5), the initial burden is on the party objecting to a discharge to produce evidence establishing the basis for his objection whereupon the burden shifts to the debtor to explain satisfactorily the loss or deficiency of assets." *Id.* (quoting *In re Farouki*, 133 B.R. 769, 777 (Bankr. E.D.Va.1991), *aff'd* 14 F.3d 244, 251 (4th Cir.1994)). The debtor's explanation must be "reasonable and credible so as to satisfy the court that the creditors have no cause to wonder where the assets went." *Id.* (quoting *Farouki*, 133 B.R. at 777).

The objecting party under Section 727(a)(5) does "not have to prove that the debtor acted knowingly or fraudulently in listing her assets or in withholding any information." *Id.* Rather, all an objecting creditor needs do is identify missing assets. *Id.* The

objecting party must establish that "the debtor at one time owned a substantial identifiable asset, not too remote in time to the date of the commencement of the case; [and] that on the date of filing the voluntary petition the debtor no longer had the particular asset." *Clayton v. Ferebee* (*In re Ferebee*), No. 10–07086–SCS, 2012 WL 506740, at *8 (Bankr. E.D. Va. Feb. 15, 2012) (quoting *Menotte v. Hahn* (*In re Hahn*), 362 B.R. 542, 548 (Bankr. S.D. Fla. 2007)). As the First Circuit explained, "it is unnecessary to show that the debtor acted fraudulently or in bad faith .... Rather the issue turns on whether a satisfactory explanation is – or is not – forthcoming." *Harrington v. Simmons* (*In re Simmons*), 810 F.3d 852, 860 (1st Cir. 2016).

Once the objecting party identifies a missing asset, the burden shifts to the debtor to explain that loss of assets in a satisfactory manner. *Ottoson-King*, 3 F. App'x at 151. A satisfactory explanation "must convince the judge and must not consist of vague and indefinite explanations." *Ferebee*, 2012 WL 506740, at *8; *see also Chalik v. Moorefield* (*In re Chalik*), 748 F.2d 616, 619 (11th Cir. 1984) ("Vague and indefinite explanations of losses that are based upon estimates uncorroborated by documentation are unsatisfactory."); *Schechter v. Hansen* (*In re Hansen*), 325 B.R. 746, 763–64 (Bankr.N.D.Ill.2005) (holding that a satisfactory explanation must be more than a "vague, indefinite, and uncorroborated hodgepodge of financial transactions.")

The provision of documentary evidence to corroborate or explain the absence of assets is often viewed as necessary. In *Chalik*, the Bankruptcy Court found the debtor's failure to provide documentation showing how the proceeds of a $130,000.00 loan were

used in the year between receiving those proceeds and filing bankruptcy was fatal to the debtor meeting his burden under § 727(a)(5). *Chalik*, 748 F.2d at 619. The Eleventh Circuit affirmed, reasoning that the debtor's failure to provide documentation to corroborate his testimony justified the trial court's decision. *Id*. at 619–20.

Citing *Chalik*, the Fourth Circuit has cautioned that, while documentation may not be an absolute requirement, it is "important" and that "[w]ithout a valid record of his financial transactions, the debtor is asking the court and creditors to believe his unverified story"; thus, "[a] debtor who fails to produce records runs a substantial risk that a bankruptcy judge may deny his petition for discharge." *Lowe's of Va., Inc. v. Thomas* (*In re Thomas*), No. 86-3560, 1987 WL 37635 at *2 (4th Cir. June 3, 1987); *Ottoson-King*, 3 F. App'x. At 151 ("The failure to offer documentary evidence to corroborate a debtor's testimony as to the loss or disposition of assets may justify the denial of a discharge pursuant to Section 727(a)(5)." (quoting *Farouki*, 133 B.R at 777)).

Because, unlike other subdivisions of Section 727, Section 727(a)(5) does not have any intent requirement, and because of its unique burden-shifting scheme, summary judgment is a particularly appropriate manner of resolving 727(a)(5) claims. *See, e.g., Bertucci v. Elian* (*In re Elian*), 659 F. App'x 104, 106-07 (3rd Cir. 2016) (affirming the grant of summary judgment where debtor failed to satisfactorily explain the difference between a loan application showing $1,150,000 in assets just 19 months before filing schedules reflecting only $20,819.49 in assets); *Simmons*, 710 F.3d at 860 (affirming grant of summary judgment where debtor's explanation for the loss of various real properties

and the rents he received therefrom was a "hodge-podge of records ... [that were] not only unlabeled and disorganized but also proved inadequate to illuminate any of the relevant issues."); *Fitzgerald v. Tucker*, No. 18-bk-709, 2022 WL 2112678 at \*2-\*3 (Bankr. N.D. W. Va. June 9, 2022) (granting summary judgment where debtor's only explanation for the loss of over $1,000,000 in the few years before bankruptcy was "traveling, gambling, drinking, and gifting money to family members" without any documentary corroboration); *Osuji v. Azie*, No. 20-cv-1365, 2021 WL 602699 at \*6 (E.D.N.Y Feb. 16, 2021) (affirming summary judgment under 727(a)(5) where debtor simply asserted, without bank records or other information, that money lent to him personally and deposited into his personal account were lost as a result of failed business ventures); *Grassman v. Brown* (*In re Brown*), 570 B.R. 98, 106, 119 (Bankr. W.D. Okla. 2017) (explaining that culpability under 727(a)(5) is "strict liability ... as, short of explaining where the assets went, it contains no defense to an unexplained loss or deficiency" and granting summary judgment where debtor failed to explain what happened to roughly $71,000 of sale proceeds from real property, and what little explanation was provided "contains no details and is supported by no documentation whatsoever."); *Texas v. Driskill* (*In re Driskill*), No. 14-52613, 2016 WL 2354722 at \*5 (May 2, 2016) (granting summary judgment where debtor's explanation for large cash withdrawals consisted only of "unsubstantiated assertions which are not competent summary judgment evidence.").

      **C.    Ms. Alexander-Giles Received $450,000 on November 5, 2018; It Was Entirely Gone by October 21, 2021.**

The plaintiff in a 727(a)(5) action has the burden of proving that "the debtor at one time owned a substantial identifiable asset, not too remote in time to the date of the commencement of the case; [and] that on the date of filing the voluntary petition the debtor no longer had the particular asset." *Ferebee*, 2012 WL 506740, at *8 (Bankr. E.D. Va. Feb. 15, 2012). Here, the United States Trustee has unquestionably carried that burden.

It is undisputed that Ms. Alexander-Giles received $450,000 on November 5, 2018. (*See* Ex. 1 at 138-45; Ex. 8.) It is undisputed that, even though this money was deposited into a business account, it constituted her and Dawn Alexander's personal funds. (*See* Ex. 1 at 143-45.) It is also undisputed that, when Ms. Alexander-Giles filed this case on October 21, 2021, all that money was gone. (*See* Ex. 11 at 15; *See also* Ex. 12 at 6.)

      **D.    Ms. Alexander-Giles Failed to Provide a Satisfactory Explanation for the Loss of the $450,000.**

Because there is no dispute that Ms. Alexander-Giles had $450,000 fewer than three years before filing bankruptcy and had none of it on the day she filed, it is her burden to provide a satisfactory explanation for what happened to that money. *Ottoson-King*, 3 F. App'x at 151. She has failed to carry that burden.

In her Schedules and Statement of Financial Affairs, Ms. Alexander-Giles failed to disclose the entities such as NinjaBe Holdings or NinjaBe Franchise Ventures that held this money or their bank accounts. She also disclosed no transfers of the $450,000 to any third

parties. Indeed, she provided nothing at all that would even have disclosed that the $450,000 ever existed.

When Mr. Leavers requested an explanation, Ms. Alexander-Giles provided nothing. In her Answer to the United States Trustee's Complaint, Ms. Alexander-Giles denied she failed to respond to Mr. Leavers, but still provided no explanation for what happened to the money. In response to the United States Trustee's interrogatories, Ms. Alexander-Giles gave only a nonsensical reference to testimony at her meeting of creditors that, due to her own concealment, could not have addressed the $450,000. And, when asked about this in her deposition, she could not even provide the identity of the bank into which the money was deposited and also was unable to explain various transfers of the money out of the accounts.

As the Fourth Circuit has stated, Ms. Alexander-Giles was required to provide an explanation that was "reasonable and credible so as to satisfy the court that the creditors have no cause to wonder where the assets went." *Ottoson-King*, 3 F. App'x at 151 (quoting *Farouki*, 133 B.R. at 777). The United States Trustee and creditor Snowden River Investors, LLC, certainly "wonder where the assets went." *Id.* The United States Trustee highly suspects that the Court does too.

## **CONCLUSION**

For the reasons stated above, the Court should grant the United States Trustee's Motion for Summary Judgment on Count III of his Complaint and deny Ms. Alexander-Giles's chapter 7 discharge pursuant to 11 U.S.C. § 727(a)(5).

Respectfully submitted,

Gerard R. Vetter
Acting United States Trustee, Region 4

By:   /s/ *Hugh M. Bernstein*
Hugh M. Bernstein (Fed. Bar No. 23489)
United States Department of Justice
101 West Lombard Street, Suite 2625
Baltimore, Maryland 21201
(410) 962-4300

Email: hugh.m.bernstein@usdoj.gov

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on September 11, 2023 a copy of the foregoing Memorandum was mailed first-class, postage prepaid to:

N/A

**I HEREBY FURTHER CERTIFY** that according to the Court's ECF records, electronic notice of this document should be provided to the following persons:

- **James Daniel (UST) Ford**     j.dan.ford@usdoj.gov
- **Daniel M. Press**     dpress@chung-press.com, pressdm@gmail.com
- **Richard B. Rosenblatt**     rrosenblatt@rosenblattlaw.com, ldorney@rosenblattlaw.com;sgonzalez@rosenblattlaw.com;wilbertrr41309@notify.bestcase.com
- **US Trustee - Baltimore**     USTPRegion04.BA.ECF@USDOJ.GOV

            /s/ *Hugh M. Bernstein*
            Hugh M. Bernstein